JON M. SANDS
Federal Public Defender
**J. LEONARDO COSTALES**
Louisiana State Bar № 35721
**CARLOS A. VELAZQUEZ MARRERO**
Puerto Rico Bar № 20743
Assistant Federal Public Defenders
407 W. Congress, Suite 501
Tucson, AZ 85701-1355
Telephone: (520)879-7500
*Attorneys for Defendant*
*Leo_Costales@fd.org*
*Carlos_Velazquez@fd.org*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Arthur Fernandez, Jr.,**<br><br>**Defendant.** | **CR21-0795-TUC-RM (EJM)**<br><br>**OBJECTIONS TO PSR** |

Arthur Fernandez, Jr., through undersigned counsel, respectfully submits the following objections to the Pre-Sentence Report (PSR) prepared in his case. (Doc. 57).

**A. Specific Offense Characteristic §2K2.1(b)(1)(A)**

Mr. Fernandez objects to the inclusion of twenty AR-15 lower receivers to the total number of firearms involved in the offense. The PSR states that "the defendant purchased 20 lower receivers and 10 firearms." PSR ¶ 20. Mr. Fernandez also objects to the calculation that the offense involved ten additional firearms apart from the twenty lower receivers. Mr. Fernandez takes the position that the offense involved only seven firearms.

*i. AR-15 lower receivers are not firearms or receivers, as defined by the statute and regulation in effect at the time of the offense*

USSG § 2K2.1(b)(1) provides for an enhancement based on the number of firearms involved in an offense. "Firearm" is defined in USSG §2K2.1 cmt n. 1 as having "the meaning given that term in 18 U.S.C. § 921(a)(3)."

18 U.S.C. § 921(a)(3) contains the following definition for firearm:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) **the frame or receiver of any such weapon**; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

(emphasis added)

Because 18 U.S.C. § 926 allows the Attorney General to promulgate "such rules and regulations as are necessary to carry out the provisions of this chapter," the Code of Federal Regulations supplies the definition for "frame or receiver." On December 13, 2019, the date of the offense, the Code of Federal Regulations contained the following definition:

> Frame or receiver. That part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

27 C.F.R. § 479.11 (2019) (attached as Exhibit A)

The plain text of this definition did not include AR-15 lower receivers. This issue was addressed in *United States v. Jimenez*, 191 F. Supp. 3d 1038 (N.D. Cal. 2016), where a district court dismissed a charge alleging possession of a machinegun receiver, in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d), after a defense motion based on unconstitutional vagueness. *Jimenez* involved possession of an AR-15 lower receiver,

charged as a machinegun, and required that court to consider the same CFR text as above. Largely because AR-15 lower receivers house the hammer and firing mechanism, but not the bolt or breechlock, the Court dismissed the portion of the prosecution that required the AR-15 lower receiver to fall within the regulatory definition of receiver. *Id.* at 1045 ("The indictment is dismissed to the extent the Government's prosecution of [the defendant] under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) is based on the theory that he possessed 'a receiver' as that term is defined in 27 C.F.R. §479.11.") (another portion of the defense's motion to dismiss based on the vagueness of the term "machinegun" was denied by the court).

The *Jimenez* decision was the subject of 28 U.S.C. § 530D letter sent by Attorney General Loretta Lynch to Speaker Paul Ryan on September 8, 2016, explaining the decision and the position of the Justice Department:

> Whether the district court's decision is best understood as a vagueness ruling or, alternatively, as a conclusion that the relevant regulatory scheme did not cover the charged conduct, this case is not a suitable vehicle for appellate review. The relevant regulation indicates that a "[f]rame or receiver" provides housing for "the hammer, bolt or breechblock and firing mechanism." The lower receiver in this case housed only the hammer and firing mechanism, not the bolt or breechblock. As a result, the district court held that the regulatory definition of "frame or receiver" did not provide the defendant with notice that his conduct violated the law. To the extent that the Bureau of Alcohol, Tobacco, Firearms and Explosives believes that the definition should encompass the lower receiver of an AR-15 or should otherwise be modified or clarified, the appropriate course is regulatory or administrative action, not an appeal of the district court's decision in this case.

(Attached as Exhibit B) also available at https://www.justice.gov/oip/foia-library/osg-530d-letters/9_8_2016/download (eed October 20, 2022)

The Attorney General eventually promulgated new regulations that encompassed AR-15 low receivers. As currently written, 27 CFR 479.11 now supplies the definition of "frame or receiver" by reference to 27 CFR 478.12. 27 CFR 478.12, in turn, includes various definitions for a receiver, one of which, CFR 478.12(f)(i), specifically includes language regarding AR-15 lower receivers: "AR-15/M-16 variant firearms: The receiver is the lower part of the weapon that provides housing for the trigger mechanism and hammer (i.e., lower receiver)." The final rule adding this language was enacted on April 26, 2022. 87 FR 24652.

AR-15 lower receivers are therefore now firearms under the current version of U.S.S.G. § 2K2.1, where the definition "firearms" is supplied by statute and regulation. But they were not countable as firearms at the time of the offense. Although the plain text of the *Guidelines Manual* has not been amended by the United States Sentencing Commission since 2018, the prohibited conduct at issue in U.S.S.G § 2K2.1 has expanded with the new statutory and regulatory definitions. At the time of the offense, the twenty lower receivers would not have been applied towards the total firearms count.

Because using the *Guidelines Manual* in effect at the time of sentencing hearing would result in a higher recommended sentencing range than the version in effect at the time of the offense, the Court must use the earlier version to avoid violating the *Ex Post Facto* Clause of the United States Constitution. U.S.S.G. § 1B1.11(b)(1); *See Peugh v. United States*, 569 U.S. 530 (2013). Applying the earlier version of U.S.S.G. § 2K1.1 requires that the Court not count the twenty AR-15 lower receivers towards the sum of the total firearms at issue.

*ii. The total number of firearms appears to include three firearms that were not part of the offense or relevant conduct*

Mr. Fernandez purchased seven firearms on December 13, 2019, using a false address on the ATF Form 4473. PSR ¶ 11. Apart from the twenty AR-15 lower receivers previously addressed, the PSR's count of firearms appears to include three other firearms. *See* PSR ¶ 20 ("[T]he defendant purchased 20 lower receivers and 10 firearms."). Those three firearms appear to be the ones mentioned in PSR ¶ 9, which were not purchased on December 13, 2019. The three firearms are alleged to have been identical Romarm Draco AK-type pistols which were purchased at the same time. PSR ¶ 9. The PSR does not specify the purchase date, but Government Disclosure, Bates 9, alleges that these three firearms were purchased on April 2, 2018. One pistol was allegedly recovered 511 days from the date of purchase during a California gang investigation. PSR ¶ 9.

U.S.S.G. § 1B1.3 allows the inclusion of relevant conduct in calculating the total offense level. The guideline and commentary provide guidance on what should be included as relevant conduct. Here, Mr. Fernandez has been convicted of giving a false address during the December 2019 purchase of firearms. There is no evidence that any crime was committed during the April 2018 purchase. Assuming, arguendo, that evidence existed to show that a crime had occurred during the apparently lawful April 2018 purchase, there is a no evidence that any such crime would have been part of the "same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The two purchases appear to be unrelated, separate in time by over a year and a half, without any

apparent common scheme or purpose. For these reasons, the court should decline to include the three Romarm pistols as part of calculating the offense level in the instant case.

**B. Specific Offense Characteristic §2K2.1(b)(2)**

The defense objects to the PSR's failure to find that specific offense characteristic §2K2.1(b)(2) applies to this case. The characteristic reads: "If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level **6**." The commentary provides guidance on applying this characteristic.

> Application of Subsection (b)(2). Under subsection (b)(2), 'lawful sporting purposes or collection' as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law. Note that where the base offense level is determined under subsections (a)(1) – (a)(5), subsection (b)(2) is not applicable.

U.S.S.G. § 2K2.1 cmt. n. 6

Mr. Fernandez was not a prohibited possessor when he purchased the firearms in this case. Mr. Fernandez was a long-time hunter and firearm aficionado. It was not illegal for him to purchase or possess the firearms at issue in this case. His offense conduct was purely technical – he intentionally used the wrong address on an ATF Form 4473. There has been no evidence presented that he unlawfully used any of the firearms in any way.



California Department of Fish and Wildlife (CA DFW) Records show years of Mr. Fernandez obtaining hunting licenses and/or permission to hunt specific animals. *See* CA DFW Records, Redacted (Attached as Exhibit C). Based on records obtained by undersigned counsel, Mr. Fernandez most recently applied to the CA DFW for a hunting license in 2017. *See* 2017 Hunting License, Redacted (Attached as Exhibit D).

The firearms that Mr. Fernandez purchased on December 13, 2019 were three .380-caliber pistols, two .38-caliber revolvers, a .45-caliber pistol, and .357-caliber revolver. PSR ¶ 11. These are firearms that are lawful to own, purchase, and collect. ATF reports of investigation state that when Mr. Fernandez was asked by agents what he was going to do with the guns, Mr. Fernandez answered that "he collects them, builds them," "he was just hoarding," and also later explained that he bought the guns because they were "cheap." Government Disclosure, Bates 2.

Given that half of the 265 million guns in the United States are concentrated among just 3% of Americans who have been described as "super-owners" and own 17 guns each on average, Mr. Fernandez's explanation that the December 13, 2019 purchase was for the purpose of hoarding or collecting is not inconsistent with the patterns of gun ownership

discovered in a 2015 survey conducted by Harvard and Northeastern Universities. Adrienne LaFrance, *The Americans Who Stockpile Guns*, THE ATLANTIC (Sep. 19, 2016), https://www.theatlantic.com/health/archive/2016/09/the-americans-who-stockpile-guns/500564/ (last visited October 20, 2022).

> The survey, conducted by Harvard and Northeastern Universities and reported by The Guardian, found that 130 million guns are owned by 3% of American adults, who each own 17 guns on average. About 55 million Americans own guns, with most owning an average of three each and nearly half owning just one or two, the survey found. Among this group, an estimated 7.7 million Americans make up the country's "gun super-owners," who own between eight and 140 guns.

Time Staff, *Half of the Guns in the U.S. Are Owned by Just 3% of the Population, Report Says*, TIME, (Sep. 19, 2016), https://time.com/4499088/guns-us-super-owners-report/ (last visited October 20, 2022).

To the extent that any state laws in Arizona or California may have prevented or restricted the ownership of these guns, the Court should also consider *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2125 (2022), which interpreted the Second Amendment as presumptively protecting an individual's right to bear arms and required that government regulations be consistent with "this nation's historical tradition of firearm regulation." Under *Bruen*, when considering the legality of a firearm regulation, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's

'unqualified command.'" *Id.* at 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)).

Given Mr. Fernandez's stated reasons for the purchase, his history as a sportsman, and the Second Amendment's scope, the Court should apply 2K2.1(b)(2) to reduce the total offense level, before acceptance of responsibility, to 6.

**C. Adjustment for Obstruction of Justice USSG §3C1.1**

Mr. Fernandez objects to the legal conclusion that Mr. Fernandez "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when he absconded from pretrial supervision." Merriam-Webster defines "abscond" as "to depart secretly and hide oneself." Merriam-Webster, [https://www.merriam-webster.com/dictionary/abscond](https://www.merriam-webster.com/dictionary/abscond) (last visited on October 20, 2022). This is not what occurred in this case. Mr. Fernandez never secretly departed and he did not hide himself. He lost contact with his pretrial services officer. He was then arrested in the Central District of California (CDCA) where he made his initial appearance. As his lawyer in the CDCA explained at the December 16, 2021 initial appearance, "[Mr. Fernandez] was unable to pay his phone bill at that time, but the minute he got on the phone, he contacted his Pretrial Officer." December 16, 2021 transcript at 7. (Attached as Exhibit E). When Mr. Fernandez contacted Pretrial Services, he was told to report in person, and was then arrested. *Id.* at 7-8. No home visit was conducted by pretrial services during the period between October 8 and December 13 where contact was lost. *Id.* at 8. As his lawyer explained, "[Mr. Fernandez] has been residing with his grandmother." *Id.*

The court in CDCA ultimately decided to release Mr. Fernandez on conditions. Mr. Fernandez telephonically appeared in the District of Arizona on December 22, 2021. He admitted the violation, and Judge Rateau asked him what had occurred.

> THE COURT: And it looks like on October 20th of 2021, a pretrial services officer here in Arizona was contacted by a pretrial services officer in the Central District of California and was notified that they were not able to make contact with you on October 8th, 12th and 13th. Is that the case? Is that what happened?
>
> THE DEFENDANT: I lost phone contact, yes, ma'am. My residence remained the same.
>
> THE COURT: But you were not in contact with pretrial. Is that right?
>
> THE DEFENDANT: That is correct, ma'am.
>
> THE COURT: Do you admit that you violated your conditions of pretrial release?
>
> THE DEFENDANT: Yes, ma'am, I do.
>
> THE COURT: And tell me exactly what happened, why you weren't in touch with pretrial at that time.
>
> THE DEFENDANT: Your Honor, I had an AT&T account that was breached. I had network issues, and AT&T fraud overtook the account. It's still under review. I did obtain -- I did obtain a (indiscernible) phone from Verizon, and I did reestablish contact with pretrial services. They asked me to come in, in person, and that's when I was arrested for the violation, ma'am.

December 22, 2021 transcript at 4 (attached as Exhibit F).

At the conclusion of the hearing, Mr. Fernandez was allowed to remain out of custody on conditions.

The allegations contained in the second petition were that Mr. Fernandez failed to comply with his conditions but did not include any allegations of absconding. The allegations were that Mr. Fernandez left the states of California and Arizona by spending the night in Laughlin, Nevada at a casino, failed to report to drug testing on two dates, and failed to charge his GPS monitor and thereby failed to submit to location monitoring. (Doc. 38). None of these allegations would fall within the circumstances described U.S.S.G. § 3C1.1 cmt n. 4 (E). Mr. Fernandez was arrested on the second petition on May 12, 2022 in the CDCA. A CDCA magistrate judge ordered detention on May 12, 2022. (Doc. 45-2). At the admit/deny hearing in the District of Arizona, Mr. Fernandez admitted the allegations and was ultimately detained. (Doc. 51).

The Court should also consider that, as the record reflects, Mr. Fernandez never missed a scheduled court date. While missing a court date could be used to support an obstruction of justice enhancement, the Court should not apply the enhancement to the technical violations at issue. *Cf. United States v. Petersen*, 98 F. 3d 502, 508 (9th Cir. 1996) (affirming the application of the enhancement for failing to appear at sentencing). While there are circumstances where a violation of pretrial release conditions could constitute obstruction of justice and support an enhancement, no such circumstance applies here. The Court should decline to apply this enhancement.

**D. Acceptance of Responsibility 3E1.1**

Mr. Fernandez pled guilty to the indictment without a plea agreement. He admitted his involvement in the offense during the interview with the probation officer, expressed remorse, and agreed with the factual basis previously used during the change of plea

hearing. PSR ¶ 17. Despite all of this, the PSR states that "[a]s of completion of the presentence investigation, the defendant has not clearly demonstrated acceptance of responsibility for the offense." PSR ¶ 26. This is incorrect. Mr. Fernandez has fully accepted responsibility and saved the government significant resources in not having to prepare for trial[1] by timely indicating his intent to plead guilty.

The PSR also appears to justify the denial by stating "[c]onduct resulting in an enhancement under USSG §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." PSR ¶ 26. This language appears to be from USSG § 3E1.1 cmt n. 3. For the reasons stated *supra* in the section regarding obstruction, the obstruction enhancement should not apply to this case. But the Court should also consider the various other application notes that support that Mr. Fernandez should be awarded a reduction for acceptance of responsibility. These include the following:

A. Truthfully admitting the conduct that comprises the offense. U.S.S.G. § 3E1.1 cmt n. 1(A). Mr. Fernandez has admitted his criminal conduct, by admitting that he purchased firearms using an address that was not his. PSR ¶ 17. Although this instant pleading challenges some of the relevant conduct calculated in the PSR, "a defendant is not required volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction" for acceptance of responsibility. USSG § 3E1.1

---

[1] The AUSA indicated in a May 18, 2022 email to undersigned counsel that the government would not oppose the third point for acceptance of responsibility if Mr. Fernandez "pleads straight-up in the near future." Mr. Fernandez pled guilty before the magistrate judge on June 9, 2022. (Doc. 51).

cmt n. 1(A). Mr. Fernandez has admitted that he used a false address on an ATF Form 4473. The objections raised here are to the legal scope relevant to calculating the offense level, and to ensure that the sentence imposed is not procedurally unreasonable through the misapplication of the guidelines.

B. Post-offense rehabilitative efforts. U.S.S.G. § 3E1.1 cmt n. 1(G). As the defense will demonstrate in its later submission to the Court, Mr. Fernandez has, while in custody in Florence, participated in numerous programs with the Corrections Rehabilitation Institute, earning various certificates of completion.

C. Timeliness of acceptance. U.S.S.G. § 3E1.1 cmt n. 1(H). Mr. Fernandez pled guilty within the timeline wherein the government agreed not to oppose the third point for acceptance of responsibility. He later accepted responsibility for his actions during the PSI. PSR ¶ 17.

D. Pleading guilty prior to trial. U.S.S.G. § 3E1.1 cmt n. 3. Mr. Fernandez pled guilty and did not go to trial. This, in itself, strongly weighs in favor of receiving an adjustment for acceptance of responsibility.

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. § 3E1.1 cmt n. 3.

For all of these reasons, the Court should grant Mr. Fernandez a two-point reduction under U.S.S.G. § 3E1.1(a) for accepting responsibility, and a further one-point reduction under U.S.S.G. § 3E1.1(b), if the total offense level is over 16, for timely notifying the government of his intent to plead guilty.

**E. Impact on calculations**

The following table will describe the impact on the guidelines depending on the Court's decision on the various objections.

| Issue | Guideline Basis | PSR's Proposal | Defense's position |
|---|---|---|---|
| Base offense level 12 | § 2K2.1(a)(7) | Base offense level: 12 | No objection |
| Number of Firearms | § 2K2.1(b)(1)(A) | Total number of firearms = 30.<br>+6 adjustment | Total number of firearms = 7.<br>+2 adjustment. |
| Reduction because of lawful sporting or collecting | §2K2.1(b)(2) | Not recommended | A reduction of total offense level, before acceptance, to level 6. |
| Obstruction of Justice | §3C1.1 | A +2 adjustment | Not recommended |
| Acceptance of Responsibility | 3E1.1(a) and (b) | Not recommended | A -2 or -3 reduction depending on total offense level otherwise calculated |

The Court's decision on the objections above can reduce the final offense level to as low as 4 or as high as 20. Mr. Fernandez's criminal history category is I. The defense's

proposed guideline range is 0-6 months, but various other ranges could apply depending on the Court's decision on the individual objections above.

**F. Conclusion**

For the reasons stated above, the Court should grant the defense's objections to the PSR, which would reduce the total offense level to 4. The resulting guideline range is 0-6 months.

**RESPECTFULLY SUBMITTED:** October 20, 2022.

JON M. SANDS
Federal Public Defender

***/s/ J. Leonardo Costales***
**J. LEONARDO COSTALES**
Assistant Federal Public Defender