GARY M. RESTAINO
United States Attorney
District of Arizona
ANGELA WOOLRIDGE
Assistant U.S. Attorney
Arizona State Bar No. 022079
405 W. Congress St., Suite 4800
Tucson, AZ 85701-5040
Telephone: (520) 620-7300
Email: Angela.Woolridge@usdoj.gov
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Arthur Fernandez, Jr.,<br>Defendant. | CR21-0795-TUC-RM (EJM)<br><br>GOVERNMENT'S RESPONE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT |

Plaintiff, United States of America, by and through its attorneys undersigned, hereby responds to the Objections to Presentence Report filed by the defendant, Arthur Fernandez, Jr., on October 20, 2022, in the above-referenced case. (Doc. 61.) Sentencing is currently set for November 16, 2022.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. FACTS AND PROCEDURAL HISTORY**

On December 13, 2019, the defendant, Arthur Fernandez, Jr., purchased a total of seven firearms – two AMT model Back Up .380 caliber pistols, one Cobra Enterprises model CA-380 .380 caliber pistol, one Taurus model 856 .38 caliber revolver, one Girsan model MC1911 .45 caliber pistol, one HWM/EAA model EA/R .38 caliber revolver, and one Taurus model 605 .357 caliber revolver – from Second Amendment Sports, Inc., a Federal Firearms Licensee (FFL) licensed under the provisions of Chapter 44, Title 18, United States Code, in Tucson, Arizona. On the ATF Form 4473–Firearms Transaction

Record completed by the defendant when acquiring the firearms, the defendant stated that his current residence was 7846 E. Monte Tesoro Dr., Kingman, AZ 86401.

Prior to this transaction, on December 2, 2019, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) responded to the 7846 E. Monte Tesoro address the defendant had provided on the aforementioned Form 4473, and observed that the house was vacant and listed for sale. The ATF Special Agent spoke with a neighbor who indicated that the last resident was a white male who moved to another address in Kingman approximately a month and a half prior, and that the previous residents were a Hispanic family from Hemet, California, who moved out approximately a year and a half ago. When interviewed by ATF Special Agents on December 13, 2019, the defendant admitted that he no longer was a resident of Arizona and was currently living in Texas for his job. The defendant also stated that his permanent residence is in Hemet, California. ATF Special Agents discovered that the defendant had a California drivers license, and observed a vehicle registered to the defendant at a residence in Hemet, California.

On April 7, 2021, an Indictment was filed charging the defendant with Felon in Possession of a Firearm and Ammunition. On July 25, 2022, the defendant pleaded guilty to the Indictment without a plea agreement. On October 20, 2022, the defendant filed his Objections to the Presentence Report. Sentencing is set for November 16, 2022.

## II. DEFENDANT'S OBJECTIONS

The government submits that the defendant's objections to the Presentence Report in this case are not supported by the facts or the United States Sentencing Guidelines, and respectfully requests this Court deny the objections.

### A. Number of Firearms

The defendant claims his offense involves only seven firearms, and that he should receive a two-level enhancement for number of firearms under U.S.S.G. §2K2.1(b)(1)(A), rather than the six-level enhancement properly applied in the Presentence Report under

§2K2.1(b)(1)(C). The defendant is incorrect. As the Presentence Report correctly determined, his offense conduct involved a total of thirty firearms.

**1. AR-15 Variant Lower Receivers**

The defendant argues that twenty AR-15 variant lower receivers which he unlawfully purchased are not “firearms” within the federal statutory definition and therefore should not be counted under U.S.S.G. §2K2.1(b)(1). (Doc. 61, pp. 2-3.) In so arguing, he relies on an out-of-district ruling in a Northern District of California case which has been neither addressed nor affirmed by the Ninth Circuit Court of Appeals, United States Supreme Court, or (to undersigned counsel’s knowledge) any other court. This decision, *United States v. Jimenez*, 191 F.Supp.3d 1038 (N.D.Cal 2016), is therefore not binding on this Court. The subsequent explicit inclusion of AR-15 variant lower receivers in the firearm definition contained in 27 CFR 478.12(f)(i), as referenced by 27 CFR 429.11, now removes any ambiguity surrounding the issue. However, this does not – as the defendant suggests – equate to a finding that prior to the enactment of the revision on April 26, 2022, AR-15 variant lower receivers were not firearms. The government thus requests that the Court overrule the objection as unsupported by any controlling authority.

Furthermore, *Jimenez* addressed the applicability of the firearm definition to an AR-15 variant lower receiver in the context of prosecution for possession of a machinegun in violation of 18 U.S.C. §922(o) and possession of an unregistered National Firearms Act weapon in violation of 26 U.S.C. §5861(d). It did not involve the offense in this case, making false statements in the records of federally licensed firearms dealers in violation of 18 U.S.C. §924(a)(1)(A), nor did it address the United States Sentencing Guidelines and the determination of number of firearms under §2K2.1(b)(1).

The statute the defendant has been convicted of violating in this case makes it a federal felony offense to knowingly make a false statement in any record required by law to be maintained by a federally licensed firearms dealer. 18 U.S.C. §924(a)(1)(A). In this case, the defendant made false statements in ATF Form 4473, the Firearms Transaction

Record required by federal law to be completed and kept in a dealer's records for every firearm sold or transferred by the dealer. Forms 4473 are the property of the ATF, and ATF retains the ability to regulate the maintenance of these forms. Notably, the ATF requires Form 4473 to be completed and retained by a dealer for the sale or transfer of not only every complete firearm, but also every firearm lower receiver, which is the serialized portion of a firearm. At all times – including the time of the defendant's offense – this requirement has included AR-15 variant lower receivers, and the ATF's ability to enforce its statutorily proscribed authority is not controlled by a Northern District of California District Court finding. Therefore, the AR-15 variant lower receivers are properly included in the Sentencing Guideline computations for the defendant's violations of 18 U.S.C. §924(a)(1)(A).

Finally, the defendant himself admitted that along with the AR-15 variant lower receivers he purchased, he also purchased firearm parts kits allowing him to build full functioning firearms, and that in the past he sold several firearms he built from AR-15 variant lower receivers and parts kits. Therefore, the government submits that even if *Jimenez* was binding on this Court and applicable to both the statute of the defendant's offenses and the Sentencing Guidelines, it would not apply to the facts of this case because the defendant built, or intended to build, full functioning firearms using the AR-15 lower receivers he purchased.

The government submits that the twenty AR-15 variant lower receivers the defendant unlawfully purchased and sold should be included in his guideline calculations, and the Presentence Report correctly counts these receivers in assessing the six-level enhancement pursuant to §2K2.1(b)(1)(C).

**2. Three firearms purchased on April 2, 2018**

The defendant also argues that three of the firearms included in his guideline calculations, a Romarm Draco AK-47 variant pistol and two Ruger .380 LCP caliber pistols were not part of the offense or relevant conduct in this case, and should not be

counted under §2K2.1(b)(1). (Doc. 61, pp. 5-6; Doc. 62, pp. 1-2.) The defendant is incorrect.

The Sentencing Guidelines provide that the base offense level and specific offense characteristics shall be determined based on all relevant conduct, including all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. §1B1.3(a)(2). For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. U.S.S.G. §1B1.3, note 5(B)(i).

Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. U.S.S.G. §1B1.3, note 5(B)(ii).

Here, the defendant's purchase of a Romarm Draco AK-47 variant pistol and two Ruger .380 LCP caliber pistols on April 2, 2018, was part of the same course of conduct and a common scheme or plan as his offense of conviction, making false statements in the records of federally licensed firearms dealers. As summarized in paragraph 9 of the Presentence Report, the defendant provided in address in Arizona when he purchased these three firearms, but in fact he was living in Hemet, California at the time of the purchase. This is the exact same unlawful conduct the defendant engaged in while committing his offense of conviction in this case. On both occasions, he purchased multiple firearms from a licensed firearms dealer in Arizona and in doing so, provided a false Arizona address when in fact he was living in Hemet, Arizona. The defendant's purchases on April 2,

2018, and December 13, 2019, were thus part of a common scheme or plan because they were connected by a common purpose and similar modus operandi. *See* U.S.S.G. §1B1.3, note 5(B)(i). Additionally, the high degree of similarity between the two offenses establishes they are sufficiently connected and related to each other to be considered as part of the same course of conduct. *See* U.S.S.G. §1B1.3, note 5(B)(ii).

In arguing that the three firearms he purchased on April 2, 2018, should not be counted, the defendant ignores the virtually identical nature of the two offenses. On both occasions, the defendant purchased multiple firearms, including pistols of the same make, model, and caliber. On both occasions, the defendant made his purchases from federally licensed firearms dealers in Arizona. On both occasions, the defendant was actually living in California. On both occasions, the defendant falsely provided an Arizona address because the dealer would not have been able to sell the firearms to him had he resided out-of-state. And the defendant likely sold, transferred, or disposed of all firearms he purchased on both occasions because he was unable to provide any of them to ATF when questioned about the whereabouts of the firearms.

Because both incidents of firearm purchases were committed by the defendant for a common purpose and with a similar modus operandi, they constitute parts of a common scheme or plan. Because of the high degree of similarity between the two incidents, they constitute parts of the same course of conduct. The three firearms the defendant purchased on April 2, 2018, are therefore properly included in the Presentence Report's guideline computations.

**B. Lawful Possession**

The defendant next argues that his offense level should be reduced to six under §2K2.1(b)(2) because he was not a prohibited possessor at the time he purchased the firearms, was a hunter and firearm aficionado, and his offense was "purely technical." (Doc. 61, p. 6.) The defendant's arguments miss the mark, as he does not qualify for this reduction.

U.S.S.G. §2K2.1(b)(2) provides: "If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determine above to level 6." A defendant who seeks this reduction bears the burden of proving, by a preponderance of the evidence, that he is entitled to the reduction. *United States v. Uzelac*, 921 F.2d 204, 205 (9th Cir. 1990). The defendant failed to meet his burden, and the Presentence Report correctly declined to apply the reduction.

The defendant claims there has been no evidence presented that he unlawfully used any of the firearms. (Doc. 61, p. 6.) The defendant overlooks the fact that it *his* burden to prove he possess each and every one of the firearms involved for lawful sporting purposes or collection, not the government's (or Probation Department's) burden to prove he did not. *See Uzelac*, 921 F.2d at 205. The absence of evidence of an intended illegal use does not establish that a defendant planned to use firearms or ammunition solely for sporting or recreational purposes. *Id*. at 205-06. Therefore, the defendant's lack-of-evidence argument is insufficient to meet his burden of proving he qualifies for the §2K2.1(b)(2) reduction.

Additionally, the defendant's offense in this case was not "purely technical," as he incorrectly claims. To the contrary, his crime of intentionally providing a false address while purchasing firearms directly caused the sale of the firearms to be unlawful. It is a direct violation of federal law for a licensed firearms dealer to sell a firearm to any person who does not reside in the state in which the dealer's business is located. *See* 18 U.S.C. §922(b)(3). Therefore, the dealers in Arizona from whom the defendant purchased firearms could not have sold the firearms to the defendant had he provided his true California address; thus the defendant's modus operandi of providing a false Arizona address. By causing these illegal sales, the defendant's acquisition and subsequent possession of the firearms purchased from dealers in Arizona was thereby not lawful.

Furthermore, the defendant purchased the firearms in Arizona while he was living in California, with the intent to transport them into California, and did in fact transport a number of firearms he previously purchased into California. The defendant's conduct of purchasing a firearm outside of the state in which he resides and transporting it into the state in which he resides constitutes a direct violation of federal law, and therefore the defendant did not lawfully possess any of these firearms. *See* 18 U.S.C. §922(a)(3).

Also, one of the firearms purchased by the defendant – a Draco AK-47 variant pistol – was recovered during a gang investigation in California. Therefore, it is clear that not all of the firearms the defendant purchased were for his own lawful use. Additionally, the defendant admitted during the investigation that he only kept a portion of the firearms he purchased, and sold or traded several others. It is noteworthy that despite agreeing to abandon all firearms he unlawfully obtained, possessed, and transported to California, the defendant never turned over any of the thirty firearms he claimed to possess in December 2019. This suggests he did not lawfully possess any of these firearms, and instead likely trafficked them to other individuals.

Additionally, all ten firearms (in additional to the twenty lower receivers) purchased by the defendant were handguns; seven were pistols and three were revolvers. These are not hunting weapons, nor are they collector's items. There is no evidence the defendant was in possession of any ammunition, much less ammunition for hunting rifles or shotguns as would be expected if the defendant possessed any such firearms for lawful hunting purposes. Nor is there any evidence the defendant possessed any items typical for use in sport shooting (such as targets, eye and ear protection, ammunition) or belonged to or frequented any shooting range. The only support the defendant provides for his argument are his bald assertions that he is a "sportsman," which falls far short of a preponderance of the evidence.

Furthermore, multiple firearms of the same make and model are atypical of firearm collection, yet the defendant purchased two of the same make, model, and caliber handguns

ono two separate occasions (for a total of four firearms). It is unclear which firearms the defendant claims he was using for lawful sporting purposes, but even assuming *arguendo* that some of the firearms purchased for the defendant were for his own collection or use in hunting or other lawful sporting activity, it is clear that not all of the firearms were. In fact, the defendant's own statements that he sold, traded, or otherwise disposed of several of the firearms establish that not *all* of the firearms meet the requirements of U.S.S.G. §2K2.1(b)(2).

The defendant does not meet his burden of proving by a preponderance of the evidence that each and every one of the thirty firearms he unlawfully purchased was possessed solely for lawful sporting purposes or collection, as required under §2K2.1(b)(2), and the Presentence Report correctly declines to grant this reduction.

**C. Obstruction of Justice**

Section 3C1.1 of the Sentencing Guidelines provides that the defendant's offense level shall be increased by two levels for Obstructing or Impeding the Administration of Justice. Included in covered conduct is willfully failing to appear, as ordered, for a judicial proceeding. U.S.S.G. § 3C1.1, note 4(E). The defendant objects to the enhancement of two levels for obstruction of justice assessed in the Presentence Report pursuant to U.S.S.G. § 3C1.1. (Doc. 61, pp. 9-11.) However, the defendant clearly qualifies for this enhancement due to his failure to appear in this case.

The defendant was released under the supervision of Pretrial Services in this case on March 19, 2021. However, he absconded while on release and Pretrial Services was unable to ascertain his whereabouts or contact him beginning in October 2021 through December 16, 2021, when he was arrested on a warrant. During the time period the defendant absconded from Pretrial Services' supervision, he also became a suspect in a domestic violence crime. Nevertheless, he was allowed to remain released in this matter. However, he continued to violate his release conditions, failing to abide by his scheduled curfew, tampering with his location monitoring device, traveling out of state without court

approval, and failing to report for drug testing on multiple occasions between December 2021 through April 2022.

The defendant claims he did not abscond, but merely "lost contact with his pretrial services officer" because he could not pay his phone bill. (Doc. 61, p. 9.) This argument is disingenuous at best, as it is inconceivable that over a two-month period the defendant could not find any telephone to use to call Pretrial Services. The defendant also fails to explain why he did not simply report to the Pretrial Service office in person if he had no means of telephonic communication. Furthermore, the fact that the defendant willfully absconded from Pretrial Services supervision between October and December of 2021 is corroborated by his continuous poor performance on release, which ultimately resulted in the revocation of his release and detention in this matter.

As the sentencing guidelines specifically include the very conduct committed by the defendant, the enhancement for obstruction of justice is properly assesses this two-level enhancement.

**D. Acceptance of Responsibility**

Despite the fact that he absconded while on release to Pretrial Services, the defendant next argues that he should nonetheless receive a guideline reduction for acceptance of responsibility. (Doc. 61, pp. 11-14.) The defendant is once again incorrect.

Section 3E1.1 of the United States Sentencing Guidelines provides for a reduction for acceptance of responsibility, but states that obstructionist conduct which results in an enhancement under § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, note 4. While both a § 3C1.1 enhancement and a § 3E1.1 reduction "may" be applicable in "extraordinary cases," the very language of Application Note 4 to § 3E1.1 demonstrates the Sentencing Commission's intent that this exception is to occur rarely and infrequently.

The defendant's case is not the "extraordinary" exception where an acceptance of responsibility adjustment applies despite his obstruction of justice. To the contrary, the

Ninth Circuit has instructed that "the relevant inquiry for determining if a case is an extraordinary case . . . is whether the defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility." *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis in original). Here, the defendant has not established that his obstructive conduct by violating his pretrial release and absconding for more than two months during the pendency of this case is *not inconsistent* with accepting responsibility. By attempting to prevent prosecution, conviction, and punishment in this matter, the defendant directly and deliberately avoided accepting responsibility for his crime.

The defendant claims he should receive the reduction for acceptance of responsibility because he pleaded guilty. (Doc. 61, p. 11.) This is incorrect. "A defendant who enters a guilty plea is not entitled to an adjustment under [§ 3E1.1] as a matter of right." U.S.S.G. § 3E1.1(a), note (3). Additionally, as the Presentence Report points out in declining to assess this reduction, the defendant not only absconded for two months, but then continued to committed multiple violations of his pretrial release conditions on numerous occasions over the course of several months, culminating in his detention in this matter. The defendant was also arrested for committing offenses – serious violent crimes of assault with a deadly weapon likely to produce great bodily injury, and battery – while on release in this case. Such conduct is squarely contrary to accepting responsibility.

Because, as discussed, the defendant has not shown that his obstructionist conduct of absconding after being released by the court in this case was not inconsistent with accepting responsibility, his guilty pleas to his crimes do not necessitate the assessment of an adjustment for acceptance of responsibility.

Finally, the government disagrees with the defendant's contention that he expressed remorse for his crime. To the contrary, the defendant stated he regrated his involvement because his arrest impacted his life and his children and limited his career aspirations. However, the government notes that the defendant has never acknowledged the harmful impact of crimes involving deadly weapons, and in fact in his objections he continues to

maintain that his offenses were merely "technical" in nature. This falls far short of showing remorse and accepting responsibility harm to society caused by his offense of conviction in this matter.

The defendant absconded from Pretrial Services supervision for more than two months, and additionally committed a number of additional violations of his release conditions as well as serious additional crimes. This constitutes lengthy ongoing obstructive conduct by which the defendant deliberately avoided responsibility for his crimes. The Presentence Report correctly declines to assess a reduction for acceptance of responsibility in this case.

## IV. CONCLUSION

For the reasons discussed, the government respectfully requests that this Court deny the defendant's Objections to the Presentence Report, adopt the appropriate calculations in the Presentence Report, and find the final offense level in this case to be 20.

Respectfully submitted this 1st day of November, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Angela W. Woolridge*
ANGELA W. WOOLRIDGE
Assistant U.S. Attorney

Copy of the foregoing served
electronically or by other means
this 1st day of November, 2022, to:

J. Leonardo Costales, AFPD
Attorney for Defendant Arthur Fernandez, Jr.